SO ORDERED.

SIGNED this 28 day of August, 2007.



Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR PRINT AND ON-LINE PUBLICATION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

**JOHN FRANCIS LANE and
MICHELLE ANNE LANE,**

               **DEBTORS.**

**CASE NO. 06-20433
CHAPTER 13**

**MEMORANDUM OPINION AND ORDER ON
DEBTORS' OBJECTION TO CLAIM OF FORD MOTOR CREDIT COMPANY AND
CREDITOR'S MOTION FOR RELIEF FROM STAY**

      The issue before the Court is what claim, if any, remains for payment pursuant to a

Chapter 13 plan after a creditor holding an allowed claim arising from the purchase of a vehicle

for personal use within the 910 days prior to filing for bankruptcy is granted relief from stay

because the vehicle is destroyed post-confirmation and a deficiency remains after application of

the insurance proceeds and plan payments to date.  Chapter 13 Debtors John Francis Lane and

Michelle Anne Lane ("Debtors") appear by Jason C. Amerine and Matthew Isaacson of Castle

Law Offices of Kansas City, P.C. Ford Motor Credit Company ("Creditor" or "Ford Credit")
appears by Charles R. Hay and Richard J. Raimond of Goodell, Stratton, Edmonds & Palmer.
There are no other appearances. The Court has jurisdiction.[1]

**FINDINGS OF FACT.**

The parties stipulated to the material facts. On June 23, 2004, Debtors purchased a 2004
Ford Focus from Olathe Ford for their personal use. The purchase was financed by Ford Credit,
which holds a perfected purchase money lien in the vehicle. On April 6, 2006, subsequent to the
enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") and
less than 910 days after the purchase, Debtors filed for relief under Chapter 13. There was no
objection to Creditor's proof of claim for $15,875.45 secured by the Ford.

An order confirming Debtors' amended plan was entered on August 25, 2006. The Plan
includes the claim secured by the Ford under the category of "Secured Claims not subject to
Valuation under § 506" and provides for monthly payments until the amount of the claim as set
forth in the Creditor's proof of claim has been paid in full. From May 31, 2006 to August 31,
2006, Creditor received four disbursements from the Chapter 13 Trustee totaling $400.

On September 2, 2006, the vehicle was involved in an accident, resulting in a total loss.
The insurer authorized payment in the amount of $10,052.38 to Creditor as the loss payee under
the Debtors' insurance policy.

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the
Standing Order of the United States District Court for the District of Kansas that exercised authority
conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code
and all proceedings arising under the Code or arising in or related to a case under the Code, effective July
10, 1984. Allowance or disallowance of claims, motions to terminate the automatic stay, and
confirmation of plans are core proceedings which this Court may hear and determine as provided in 28
U.S.C.§ 157(b)(2)(B), (G), and (L). There is no objection to venue or jurisdiction over the parties.

On October 20, 2006, Debtors filed an objection to Ford Credit's claim.[2]  They recommended that because the collateral had been destroyed and was no longer in their possession and because Ford Credit had received plan distributions of $400.00 and insurance proceeds of $10,052.38, Ford Credit's claim should be allowed as a secured claim in the amount of $10,452.38, representing plan payments and the insurance proceeds, and an unsecured claim in the amount of $5,423.07.  Creditor objected.[3]  On October 23, 2006, Ford Credit filed a motion for relief from stay, for an order allowing Creditor to apply the insurance proceeds to its outstanding claim, and for a ruling that the $5,823.07 remaining on its claim be paid through the plan as a secured claim.[4]  Debtors objected to the proposed treatment of the balance, stating that they will surrender the vehicle to Creditor[5] and asserting that either the claim will be paid in full by receipt of the insurance proceeds and the vehicle or the remaining balance should be paid as an unsecured claim.[6]  The parties briefed their respective positions.[7]

## POSITIONS OF THE PARTIES.

This case concerns the question of what claim remains to be paid to a secured creditor through a Chapter 13 plan after the post-confirmation repossession of collateral.  Here the

---

[2] Doc. 42.

[3] Doc. 57.

[4] Doc. 45.

[5] The record is unclear about the whereabouts of the vehicle.  When objecting the Creditor's claim, Debtors alleged they no longer had possession, but when objecting to Creditor's motion for relief from stay, Debtors asserted that they will surrender the vehicle to Creditor.  If the vehicle is under the control of either the Debtors or the Creditor, it should be liquidated and the proceeds applied to the allowed secured claim.

[6] Doc. 61.

[7] Docs. 81, 82, 88, & 89.

difficulty of this question of law, which was unsettled in this circuit and many others prior to the BAPCPA, is compounded because Creditor's claim is governed by the hanging paragraph following 11 U.S.C. § 1325(a)(9)[8] added to the Code by the BAPCPA.  It specifies unique treatment for certain secured consumer debt, often referred to as "910-claims," and provides as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing;

Creditor argues that the Code prior to the BAPCPA did not allow modification of a Chapter 13 plan to provide for the payment of a secured creditor's deficiency claim remaining following post-confirmation surrender of a vehicle to a secured creditor as an unsecured claim. After the BAPCPA, with respect to 910-vehicle loans, Creditor argues that this protection was enhanced, so Debtors must pay the deficiency as a secured claim.  Debtors disagree.  They assert that prior to the BAPCPA the Code permitted the amendment of a Chapter 13 plan, following surrender of a vehicle securing a claim, to pay the deficiency in the previously secured claim as an unsecured claim.  As to 910-vehicle claims, Debtors submit that the BAPCPA's hanging paragraph should be construed to either treat the claim as paid in full by the surrender of the collateral or not to have changed the law which pre-BAPCPA allowed payment of the deficiency as an unsecured claim.

---

[8] Future references to title 11 in the text shall be to Code section only.

**ANALYSIS AND CONCLUSIONS OF LAW.**

Pre-BAPCPA, commentators and courts were divided on whether in a Chapter 13 case a deficiency in a secured claim following post-confirmation repossession or surrender of collateral could be reclassified as an unsecured claim. No post-BAPCPA cases addressing this issue with respect to 910-vehicle loans, have been cited by the parties or located by the Court's own research. To resolve the matter, the Court first examines the effect of the hanging paragraph and then considers the pre-BAPCPA cases addressing plan amendment following liquidation of collateral. In light of this background, the Court considers the relationship between plan amendment and 910-claims. For the reasons stated below, the Court concludes that the Debtor's Chapter 13 plan may be amended to provide for termination of payments on the 910-claim and for the payment of Ford Credit's deficiency as an unsecured claim.

**A. The Code provides unique treatment for purchase money secured claims arising from the debtor's purchase of a vehicle for personal use within 910 days of filing.**

The hanging paragraph following § 1325(a)(9), quoted above, dictates unique treatment for 910-claims, such as Ford Credit's claim in this case. Although there has been much discussion and divergence of opinion concerning 910-claims, in this circuit, the issues are being clarified.[9]

---

[9]

The question of interest on a 910-claim has been controversial. In this district, one Bankruptcy Judge, in *In re Vega*, 344 B.R. 616 (Bankr. D. Kan. 2006) (Karlin, J.), holds the creditor is entitled to interest under the authority of § 1325(a)(5)((B)(ii). On the other hand, one Bankruptcy Judge finds that the hanging paragraph, by making the definition of allowed secured claim in § 506(a) inapplicable, precludes the application of all of § 1325(a)(5), thereby removing the basis for an award of interest. *In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006) and *In re Kinsey*, 368 B.R. 888, (Bankr. D. Kan. 2007) (Berger, J.). The Tenth Circuit Bankruptcy Appellate Panel in *DaimlerChrysler Fin. Serv. N. Amer., LLC v. Griffin (In re Wilson)*, __ B.R. __ (10th Cir. BAP Aug. 24, 2007) has rejected the reasoning of *In re Wampler*. One District Court Judge, in *Citifinancial Auto v. Hernandez-Simpson*, __ B.R. __, 2007 WL 1464258 (D. Kan. 2007) (Robinson, J.), has also held that a 910-creditor is entitled to interest if the debtor elects to retain the collateral. This Court, in *In re Thomas*, Case no. 06-21363 (Bankr. D. Kan. Aug. 27, 2007), has adopted the reasoning of the BAP as stated in *In re Wilson* and held that a 910-creditor is entitled to interest at the

5

The courts universally accept the concept that the hanging paragraph precludes cram down of a 910-debt and requires the debtor to pay the entire amount owed to the creditor in order to retain the 910-collateral.[10]  Section § 506(a), which provides for bifurcation of secured claims into a secured portion equal to the value of the collateral and an unsecured portion for the difference, does not apply to 910-claims.[11]  The value of the collateral is irrelevant in determining the amount of the claim; the creditor holds a 910-claim in the amount owed of the date of filing.

The Tenth Circuit BAP,[12] like many courts,[13] holds, in the context of initial plan confirmation, that surrender of the vehicle pursuant to § 1325(a)(5)(C) satisfies the 910-claim in full.  They reason that pre-BAPCPA, the unsecured claim arising upon a plan election to surrender collateral under § 1325(a)(5)(C) was based upon § 506(a), that the hanging paragraph precludes

_____

*Till* rate.

[10] *DaimlerChrysler Fin. Serv. Americas LLC. v. Quick (In re Quick)*, __B.R.__ , 2007 WL 1941749, *1 (10th Cir. BAP. 2007).  See cases collected in Robin Miller, Annotation, *Effect of "Hanging" or "Anti-Cramdown" Paragraph Added to 11 U.S.C.A. § 1325(a) by Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)*, 19 A.L.R. Fed.2d 157 (2007).

[11] *In re Quick*, 2007 WL 1941749 at *2.

[12] *Id.*, 2007 WL 1941749 at *3.

[13] *E.g.*, *Capital One Auto Finance v. Osborn (In re Osborn)*, ___ B.R. ___, 2007 WL 542435 (8th Cir. BAP 2007); *In re Payne*, 347 B.R. 278 (Bankr. S.D. Ohio 2006).  On the other hand, some courts hold that the hanging paragraph has no applicability to the surrender of 910-collateral pursuant to a Chapter 13 plan and the 910-creditor has an unsecured claim as determined by Article 9 of the Uniform Commercial Code for the difference in the amount owed and the liquidation proceeds of the vehicle.  *E.g., In re Wright*, __F.3d__, 2007 WL 1892502 (7th Cir. 2007) *(holding that when § 506 vanishes and the debtor surrenders the collateral, the creditor has an unsecured claim under Article 9 of the Uniform Commercial Code); Dupaco Comm. Credit Union v. Zehrung (In re Zehrung)*, 351 B.R. 675, 678 (W.D. Wis. 2006) (holding  "[a] creditor taking possession of collateral does not depend upon § 506 to determine the value of its unsecured claim . . ..  Rather, when collateral is surrendered pursuant to § 1325(5)(C)[sic] the amount of the remaining unsecured claim is determined by state law, uniform commercial code section 9-610 to 9-624.").  See cases collected in Robin Miller, Annotation, *Effect of "Hanging" or "Anti-Cramdown" Paragraph Added to 11 U.S.C.A. § 1325(a) by Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)*, 19 A.L.R. Fed.2d 157 (2007).

the application of § 506(a) for 910-vehicle loans, and therefore surrender pursuant to a Chapter 13 plan satisfies the 910-claim in full. The Tenth Circuit BAP states, "The hanging paragraph of § 1325 is unambiguous and eliminates § 506 bifurcation in all 910 cases. Therefore debtors' proposed surrender of vehicles in full satisfaction of their indebtedness . . . is authorized."[14]

**B. Pre-BAPCPA treatment of secured claim deficiency following post-confirmation repossession or surrender of collateral.**

Neither the Tenth Circuit Court of Appeals nor the Tenth Circuit Bankruptcy Appellate Panel has published an opinion addressing the issue of treatment of a secured claim deficiency following post-confirmation repossession or surrender of collateral. The bankruptcy courts in the Tenth Circuit are divided.[15]

The leading case holding that following post-confirmation surrender of collateral the deficiency must be paid as a secured claim is the Sixth Circuit's decision in *In re Nolan*.[16] Debtor moved to modify her plan post-confirmation in order to surrender the vehicle securing creditor's claim and to reclassify the deficiency that she owed following application of the value of the collateral as an unsecured claim. The court concluded that a debtor cannot modify a confirmed

---

[14] *In re Quick*, ___ B.R. at ___, 2007 WL 1941749 at *3.

[15] *Compare In Re Wilcox*, 295 B.R. 155 (Bankr. W.D. Okla 2003) (holding that a debtor may not modify a confirmed Chapter 13 plan to provide that certain collateral will be surrendered in full satisfaction of that creditor's secured claim as valued in the confirmed plan) *with In re Wright*, 2005 WL 3752230, Case no. 03-20787-13 (Bankr. D. Kan. March 6, 2003) (Berger, J.) (allowing post-confirmation modification of Chapter 13 plan to alter treatment of secured claim) *and In re Knappen,* 281 B.R. 714 (Bankr. D.N.M. 2002) (allowing modification of confirmed Chapter 13 plan, following creditor's repossession of collateral, to terminate payments on secured claim and increase amount of creditor's unsecured claim).

[16] *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000).

plan under § 1329(a)[17] by surrendering collateral to the creditor, having the creditor sell the

collateral, applying the proceeds to the claim, and then treating any deficiency as an unsecured

claim.  Section 1329(a)(1) was construed to permit only "modification of the *amount* and *timing*

of *payments*, not the total *amount* of the *claim*."[18]  It does not expressly allow a debtor to alter,

reduce, or reclassify an allowed secured claim.  The court held that allowing modification of a

plan to pay the deficiency as proposed would contravene the statute.[19]  The pre-BAPCPA version

of § 1325(a)(5)(B)(ii)[20] was construed to mandate that a secured claim is fixed in amount and

status at confirmation and must be paid in full once it has been allowed.  The proposed

modification was also found to contravene § 1327(a), effect of confirmation, "because a contrary

interpretation postulates an unlikely congressional intent to give debtors the option to shift the

---

[17]  The portions of § 1329(a) relevant to this case were not amended by BAPCPA and are the following:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
> > (1) increase or reduce the amount of payments on claims of a particular class . . . ;
> > (2) extend of reduce the time for such payments;
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan;
> > \*\*\*
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

[18]  *In re Nolan*, 232 F.3d at 535.

[19]  *Id.*, 232 F.3d at 533.

[20]  11 U.S.C. § 1325(a)(5)(B)(ii)(1993).

Case 06-20433   Doc# 103   Filed 08/28/07   Page 8 of 21

burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset."[21]

In the Sixth Circuit, *Nolan* is not limited to plan modifications proposed by the debtor. Rather, in *In re Adkins*,[22] *Nolan* was held to foreclose reclassification of the debt remaining after creditor relief from stay and repossession and sale of collateral. After debtor's default in Chapter 13 plan payments, creditor moved for relief from stay to repossess and sell the vehicle securing its claim and requested that any deficiency balance be paid as a secured claim, after the creditor filed an amended proof of claim reflecting credit of the proceeds of sale. The Chapter 13 Trustee objected, contending that the any deficiency should be reclassified as a unsecured claim. The court held that a motion under § 1329 to modify a plan, as had been made in *Nolan*, is not the "key to whether reclassification of secured claims post-confirmation is allowed in Chapter 13 bankruptcies."[23] Because of its reliance on §§ 1325 and 1327, *Nolan's* ban on reclassification was found equally applicable to cases where the debtor's actions, such as default, have provided the cause for the secured creditor to have the automatic stay lifted. Section 502(j), which allows for the reconsideration of claims that have been allowed or disallowed for cause, was construed as not allowing "reclassification of an already-allowed claim."[24]

---

[21] *In re Nolan*, 232 F.3d at 533.

[22] *Ruskin v. DaimlerChrysler Serv. N. Amer., L.L.C. (In re Adkins)*, 425 F.3d 296 (6th Cir. 2005)

[23] *Id.*, 425 F.3d at 302.

[24] *Id.*, 425 F.3d at 304.

9

The rule prohibiting reclassification of a deficiency in a secured claim after sale of collateral is followed by numerous courts.[25] "Perhaps a majority of the reported decisions interpret § 1329 to prohibit modification to surrender collateral or to account for repossession when the modified plan treats the deficiency as an unsecured claim."[26] Norton's treatise finds the *Nolan* view consistent with the Code and the Fifth Amendment of the Constitution of the United States.[27]

However, both *Collier on Bankruptcy*[28] and Lundin's treatise on Chapter 13[29] find *Nolan* wrongly decided. Collier states in part:

> The Court of Appeals for the Sixth Circuit and some bankruptcy courts have held that section 1329(a)(1) does not permit a debtor to surrender collateral to a secured creditor and modify the plan to reduce cash payments to that creditor. . . .
>
> Other courts have held to the contrary, based on a more careful and complete reading of the Code. Typically, a secured claim is in a separate class from other claims, and section 1329(a)(1) specifically permits a modification to decrease the payments on claims in a particular class, i.e., to the amount already paid. Section 1329(a)(3), which the *Nolan* court did not consider, provides that "the amount of the distribution to a creditor" may be modified to "take into account any payment of such claim other than under the plan." Thus, a reduction of the amount owed to a creditor may be the basis for a modification that has the effect of changing the amount or classification of a claim after confirmation. Further, section 502(j)

---

[25] *E.g., In re Wilcox*, 295 B.R. at 155; *In re Dunlap*, 215 B.R. 867 (Bankr. E.D. Ark. 1997). *See* 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 264.1, n. 24 (3rd Ed. 2000 & Supp. 2004)(collecting cases).

[26] 3 Keith M. Lundin, *Chapter 13 Bankruptcy* at 264-10.

[27] 5 *Norton Bankruptcy Law & Practice 2d* § 124:3 (Norton, auth. and ed-in-chief 2000 ).

[28] 8 *Collier on Bankruptcy* ¶ 1329.04 (Alan N. Resnick & Henry J. Sommer eds.-in-chief 15th ed. rev. 2007).

[29] 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 264.1.

10

permits a court to reconsider a claim for cause, and under Federal Rule of Bankruptcy Procedure 3008, the court may allow or disallow a claim, increase or decrease the amount of a prior allowance, accord the claim a different priority or enter any other appropriate order.[30] . . .

Lundin provides a very thorough analysis of the issue and concludes that "[t]o preclude a Chapter 13 debtor from modifying the plan to reflect that a creditor repossessed its collateral and is thus no longer the holder of an allowable secured claim turns the Code on its head."[31]

Many bankruptcy courts hold that following surrender of collateral, an amended Chapter 13 plan that provides for the payment of the deficiency in the secured claim as an unsecured claim is permitted by the Code.[32] *In re Knappen*[33] and *In re Zieder*[34] illustrate this line of cases. The confirmed plan in *Knappen* bifurcated Ford's claim of $18,888 into a secured portion of $9,000, with the remainder unsecured. Debtor defaulted in the plan payments on the secured portion. Ford was granted relief form stay, repossessed and sold the car, applied the sale proceeds to the secured claim, and asserted a deficiency. The debtor moved to modify the plan to stop adequate protection and plan payments on the secured claim and to allow Ford to file an amended proof of claim for the deficiency as an unsecured claim. The court relied upon §§ 1329(a)(1) (which allows plan amendment to increase or decrease the amount of payments on claims of a particular

---

[30] 8 *Collier on Bankruptcy* ¶ 1329.04[1].

[31] 3 Keith M. Lundin, *Chapter 13 Bankruptcy* at 264-4.

[32] *E.g., In re Zieder*, 263 B.R. 114 (Bankr. D. Ariz. 2001); *In re Hernandez*, 282 B.R. 200 (Bankr. S.D. Tex. 2002). *See* cases collected in 3 Keith M. Lundin, *Chapter 13 Bankruptcy* at § 264.1, n. 22.

[33] *In re Knappen*, 281 B.R. 714 (Bankr. D.N.M. 2002).

[34] *In re Zieder*, 263 B.R. at 114.

11

class), 1329(a)(3) (which allows plan amendment to alter the distribution to a creditor to the extent necessary to take into account payments outside the plan), and 502(j) (reconsideration of claims for cause). It found that the res judicata effect of plan confirmation is limited, and declined to place the entire risk of loss of value of the collateral on the debtor. The court therefore granted the motion to modify the plan, finding that the amended plan was proposed in good faith. Debtors were allowed to cease adequate protection and plan payments on the secured claim. Ford was allowed to file an amended proof of claim to increase its unsecured claim.

Similarly, in *Zieder*, the confirmed plan bifurcated Ford's claim secured by a pickup into secured and unsecured portions. About a year after confirmation, to reduce their monthly payments, debtors surrendered the pickup to Ford, and the truck was sold for less than the remaining balance on the secured portion of the claim. Debtors moved to modify their plan to terminate any secured debt payment to Ford and add the deficiency to the unsecured portion. The court rejected the reasoning of *Nolan* and allowed the amendment. The court reasoned that although, as noted by *Nolan*, § 1329(a) does not expressly allow a debtor to alter, reduce, or reclassify a preciously allowed secured claim, other provisions of the Bankruptcy Code do.[35] Section 502(j) allows reconsideration of allowed claims for cause, and § 506(a) provides for bifurcation of allowed claims based upon the value of collateral. When these sections were applied to the facts, the court concluded that Ford's claim must be reconsidered for cause, finding liquidation of collateral adequate cause for reconsideration. When reconsidered, Ford's claim became an unsecured claim by operation of law. There was no longer any collateral securing

---

[35] *In re Zieder*, 263 B.R. at 117.

Ford's claim. "Consequently § 506(a) by its own express terms makes Ford's entire claim an unsecured claim."[36]

### C. Debtor's Confirmed Chapter 13 plan may be amended.

Under the circumstances of this case, where the collateral was destroyed in an accident and the claim is governed by the hanging paragraph of § 1325(a), this Court declines to follow *Nolan* and *Atkins* and adopts the reasoning of those courts allowing modification of confirmed Chapter 13 plans where collateral, which the plan provided would be retained by the debtor, is liquidated during the term of the plan. *Nolan* was decided in 2000, but has failed to gather full support by the courts and has been severely criticized by commentators.

*Nolan* denied amendment under § 1329(a), which was found not to "expressly allow a debtor to alter, reduce, or reclassify a previously allowed claim."[37] In the view of this Court, Nolan's construction of § 1329(a)(1) is unduly narrow. Section 1329(a)(1) allows for amendment to increase or decrease the payments on a particular class of claims, such as 910-claims. More importantly, neither *Nolan* nor *Atkins* even considered § 1329(a)(3) as authority for the proposed amendment. Section 1329(a)(3) allows plan amendments "to the extent necessary to take account of any payments of such claim other than under the plan," such as the application of liquidation proceeds. This Court finds, as one commentator states, "Modifying the plan to reflect that the

---

[36] *Id.*

[37] *In re Nolan*, 232 F.3d at 532.

Case 06-20433   Doc# 103   Filed 08/28/07   Page 13 of 21

collateral no longer exists . . . is exactly what § 1329(a)(3) describes."[38]  The subsection expressly

allows modification "to the extent necessary" to account for payments outside the plan.

*Nolan* also fails to address § 502(j), which provides for the reconsideration of an allowed

claim for cause.  *Atkins* rejects consideration of § 502(j) because "the literal language of section

502(j) addresses only the 'allowance' or 'disallowance' of claims, not the reclassification of an

already-allowed claim."[39]  This Court disagrees.  Allowance and disallowance of a claim includes

not only the amount of the claim but also its classification.  The language of § 502(j) is broad.  It

provides in part:  "A claim that has been allowed or disallowed may be reconsidered for cause.  A

reconsidered claim may be allowed or disallowed according to the equities of the case."

Bankruptcy Rule 3008[40] implements such reconsideration.  There is nothing in the Code or the

Rule excluding classification, which is an essential component of claim allowance, from

reconsideration.

The Code and bankruptcy rules fail to state what standard will apply to motions to

reconsider claims.[41]  "What constitutes 'cause according to the equities of the case' is not

---

[38] 3  Keith M. Lundin *Chapter 13 Bankruptcy* at 267-3;  *see* 8 *Collier on Bankruptcy* ¶ 1329.04[3] (stating that "[s]ources of outside payment include . . . disposition of collateral");  *In re Knappen*, 281 B.R. at 717 (allowing amendment and citing §§ 1329(a)(1) and (a)(3)).

[39] *In re Atkins*, 425 F. 3d at 304.

[40] Fed. R. Bankr. P. 3008.  It provides: "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate.  The court after a hearing on notice shall enter an appropriate order."  References in the text to the Federal Rules of Bankruptcy Procedure shall be to the Bankruptcy Rule number.

[41] Several courts have held that when the motion is filed within 10 days of the order allowing or denying the claim, the standard of Bankruptcy Rule 9023, which incorporates Fed. R. Civ. P. 59, will apply, but, as to motions filed outside the 10 days, the standards of Bankruptcy Rule 9024, which incorporates Fed. R. Civ. P. 60, will control.  Bruce H. White and Maria H. Belfield, *What Standards Govern Motions to Reconsider Orders Allowing or Disallowing Claims?* 17 Am. Bankr. Inst. J. 22 (June

14

specifically set forth, but is an adaptable standard which reflects bankruptcy laws' roots in equity jurisprudence."[42]  In the Tenth Circuit, when considering motions to amend claims filed more than 10 days after entry of the order of allowance or disallowance, the courts are directed to consider the standards of Federal Rule 60.[43]  That rule permits relief from a final judgment for various reasons, including "when it is no longer equitable that the judgment should have prospective application."[44]

In this case, there has not been a formal motion to amend Ford Credit's claim.  However, Debtors did file an Objection to Claim of Ford Motor Credit[45] after the vehicle was destroyed, asserting that Creditor's claim should be allowed as a secured claim in the amount of $10,452.38, representing the trustee distributions and insurance proceeds, and an unsecured claim in the

---

1998).

[42] 4 *Collier on Bankruptcy* ¶ 502.11[5] (*citing* 1983 Advisory Committee Note to Fed R. Bankr. P. 3008).

[43] *Haggart Group v. Frontier Airlines, Inc. (In re Frontier Airlines, Inc.)*, 137 B.R. 808, 810 (D. Colo. 1992).

[44] Fed. R. Civ. P. 60(b)(5).  Rule 60(b) provides relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. . . .

[45] Doc. 42.

amount of $5,423.07. Debtors also objected to Ford Credit's motion for relief from stay[46] in which it asserted that the balance, after application of plan payments and insurance, of approximately $5,823.07, be paid as a secured claim. Although the foregoing standards for reconsideration may not be applicable because allowance of Creditor's claim was not litigated,[47] the court finds these stringent standards satisfied. The filed proof of claim stated that Ford Credit's claim was fully secured. The claim was allowed as a 910 fully secured claim. The fact the collateral has been destroyed renders it no longer equitable that the Debtors should have to pay according to the confirmed plan and justifies relief from the allowance of the 910-claim. This Court finds that within the context of Chapter 13 plan modification, post-confirmation destruction of collateral through no fault of the debtor or the creditor constitutes cause for reconsideration of the allowed claim secured by that collateral.

Further, the valuation and secured creditor cram down, which were important underlying policy concerns driving the outcome in *Nolan*[48] and *Atkins*,[49] are not relevant when the proposed amended plan changes the treatment of a 910-claim for which cram down is prohibited by the hanging paragraph. As to secured claims not governed by the hanging paragraph, at confirmation the creditor's claim is crammed down by bifurcating it into secured and unsecured portions. If the plan accurately valued the collateral and if payments equal or exceed reasonable depreciation, then

---

[46] Doc. 45.

[47] *See In re McLean Indust., Inc.*, 121 B.R. 704 (Bankr. S.D. N.Y. 1990) (holding § 502(j) "cause" standard applies only when there has been a court order allowing or disallowing the claim).

[48] *In re Nolan*, 232 F.3d at 533.

[49] *In re Atkins*, 425 F.3d at 303 (holding "allowing reclassification following a repossession caused by Debtor's default also would allow the Debtor to shift the burden of depreciation back to the secured creditor, and possibly lead to a double reduction of Debtor's debt").

the creditor would be whole at anytime after confirmation when repossession or surrender occurs, except to the extent that payments were in default or depreciation was not ordinary.[50]  However, the reality is that because the Code requires that the amount of the secured portion of a claim be determined by replacement cost, which is higher than liquidation value, the Code usually produces an artificially high value that is not caused by either the debtor or the creditor, resulting in a deficiency following liquidation not provided for by the plan.  Therefore to allow plan amendment following liquidation is viewed by those courts not permitting plan amendment as a double cram down.  These concerns are not present as to 910-claims.

The Court also rejects the notion that § 1327 bars amendment.  Section 1327(a) provides that a confirmed plan is binding on the debtor and each creditor, thereby imposing a res judicata effect.  *Nolan's* reliance on the argument that to allow amendment would contravene § 1327(a) was grounded in concerns over giving the debtor "the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset."[51]  As discussed above, this concern is not relevant to a 910-claim when the collateral is accidently destroyed.  In addition, as noted by the court in *In re Knappen*,[52] interpreting § 1327 to mean that the plan cannot be amended ignores § 1329.

The Court therefore holds that modification of a confirmed Chapter 13 plan under the authority of § 1329(a)(1) and (3) is permitted under the circumstances presented, and Creditor's allowed 910-claim will be reconsidered for cause.  Debtors elected in their Chapter 13 plan to pay

---

[50] 3 Keith M. Lundin, *Chapter 13 Bankruptcy* at 264-29.

[51] *In re Nolan*, 232 F.3d at 533.

[52] *In re Knappen*, 281 B.R. at 718.

17

the full contract price for the vehicle as a condition to their keeping the collateral. Since the collateral has been destroyed, the reason for their election no longer exists and amendment of the plan's treatment of Creditor's claim is warranted.

**D. The plan may be amended to terminate payments on the 910-claim as of the date of destruction of the collateral and to pay the remaining portion of Creditor's claim as an unsecured claim.**

The Court must next determine the appropriate modification of the plan. Pre-BAPCPA, when amendment of Chapter 13 plans have been allowed to reflect post-confirmation surrender or destruction of collateral securing an allowed claim and the liquidation value of the collateral was insufficient to satisfy the allowed secured claim in full, many courts have allowed the deficiency as an unsecured claim. This approach is illustrated by *Zeider*.[53] After holding that creditor's liquidation of a motor vehicle securing its claim after post-confirmation surrender by the debtors constituted cause for reconsideration of the creditor's allowed claim, the court found that the application of § 1329(a) and § 506(j) compelled the conclusion that the secured creditor's remaining claim "must be reconsidered for cause and, when reconsidered, it becomes an unsecured claim by operation of law. There is no longer collateral securing [the creditor's] claim."[54] As a leading treatise on Chapter 13 states, "Once a lienholder has received all of its collateral by surrender or by repossession, it cannot be the holder of an allowable secured claim

---

[53] *In re Zeider*, 263 B.R. at 114. *See also, e.g., In re Knappen*, 281 B.R. at 714 (allowing plan amendment after post-confirmation voluntary repossession of vehicle and holding the secured creditor could file an amended proof of claim increasing its unsecured balance of its claim).

[54] *In re Zeider*, 263 B.R. at 117.

18

under § 506(a)."[55]  The deficiency is added to the amount of the unsecured claim, which at

confirmation was determined under § 506(a).

Neither the Court's research nor the briefs of the parties have identified any cases or

commentary addressing what plan amendment is appropriate when 910-collateral is liquidated

because of destruction.  One alternative, urged by the Debtors, is to terminate all payments to the

Creditor based upon § 1325(a)(5)(C).  They correctly note that pursuant to § 1329(b) modified

plans are subject to §1325(a) and surrender under § 1325(a)(5)(C) satisfies a 910-creditor's claim

in full.

The Court rejects Debtors' position.  The Court holds that surrender under § 1325(a)(5)(C)

is not available when pursuant to the confirmed plan the Debtors initially elected to retain the

collateral, undertaking the obligation to pay in full, and then seek to amend the plan following

destruction of the collateral.  After application of the insurance payments, the conditions for

application of the hanging paragraph are no longer present.  The collateral is gone, and the

creditor's claim has changed from a 910-claim secured by the vehicle to an unsecured claim. With

respect to the claim of the vehicle lender, none of the alternatives of §1325(a)(5) apply, because

there is no allowed secured claim.  Although the legislative history of the hanging paragraph is

sparse,[56] this Court believes that Congress, by prohibiting cram down of purchase money claims

---

[55] 3 Keith M. Lundin, *Chapter 13 Bankruptcy* at 264-4.

[56] The section which enacted the hanging paragraph is captioned "Restoring the Foundation for Secured credit."  *In re Wright*, __ F.3d at __ , 2007 WL 1892502 at *3 (*citing* Pub. L. 109-8, 119 Stat. 23, 80 (Apr. 20, 2005)).  H.R. Rep. No. 109-31(1) at 17 (2005), as reprinted in E-2 *Collier Bankruptcy* App. Pt. 10(b)-268, states in part: "Protections of Secured Creditors. S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use."

19

within its definition, had the purpose of protecting secured creditors' state law rights if the borrower filed for relief under the Code. The Court's resolution of this case furthers that purpose. Under state law, if collateral is destroyed and the creditor receives insurance proceeds and liquidation value, the deficiency is an unsecured claim. To apply § 1325(a)(5)(C) in this circumstance would deprive the creditor of its unsecured claim, effectively changing the debt to an in rem obligation.

As noted above, §1329(a)(3), without limitation, allows modification of a confirmed plan "to alter the . . . distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." In this case, the natural result of the payment outside the plan is the loss of the collateral and therefore the secured claim. Section 1329(a)(3) does not prohibit reclassification of claims; rather it allows modification "to the extent necessary" to account for the payment. Likewise, § 502(j), which allows for the reconsideration of claims, grants the court broad authority and does not preclude reclassification based upon post-confirmation events. Once cause is found, "a reconsidered claim may be allowed or disallowed according to the equities of the case." Classification of claims is one essential aspect of claim allowance; there is no reason to exclude reclassification from the scope of permitted reconsideration. In this case, to fully account for the payment outside the plan, it is necessary and equitable to amend the plan so that Ford Credit's deficiency claim is included in the class of unsecured claims.

The Court finds that upon post-confirmation destruction and surrender of the vehicle securing a 910-lender's claim, when there is no suggestion that the Debtors did not act in good faith, a plan may be amended to terminate the payments on the 910-claim as a secured claim and

20

to pay the 910-creditor's deficiency as an unsecured claim. The total amount of the claim as of the petition date has not changed, but any deficiency remaining after the credit for payments pursuant to the plan and the insurance proceeds is no longer payable as a 910-claim.

**CONCLUSION.**

For the foregoing reasons, the Court grants the Creditor's motion for relief from stay in part and sustains Debtors' objection to claim. Creditor may apply the insurance proceeds to the payment of its claim and may repossess and sell the vehicle, if the circumstances warrant. Creditor's motion is denied to the extent it seeks a ruling that the deficiency should be paid as a secured claim. Commencing as of the date of destruction of the vehicle, there was no allowed secured claim and the deficiency became an unsecured claim. An amended proof of claim to this effect should be filed and the plan amended accordingly.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

**###**